UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Julieta Bencomo, Dr. George Brooks, Sandra Kennedy, Joe Eddie Lopez, Hilda Ortega-Rosales, Samuel Peter Ramirez, Fernando Ruiz, Pastor Warren Stewart and Winston Tease,<br><br>Plaintiffs,<br><br>vs.<br><br>Phoenix Union High School District No. 210, Judith Pettit, Mary Price, David Wood, Linda LaFoy and Scot Butler, III, in their official capacities as members of the Governing Board of Phoenix Union High School District No. 210, Sandra E. Dowling, in her official capacity as Maricopa County School Superintendent, Maricopa County, Maricopa County Board Of Supervisors, and Betsey Bayless, Jim Bruner, Carole Carpenter, Tom Freestone and Ed Pastor, in their official capacities as members of the Maricopa County Board of Supervisors,<br><br>Defendants. | No. CV-90-0369-PHX-GMS<br><br>**AMENDED CONSENT DECREE** |

This action is brought by African-American and Hispanic (collectively, "minority," and who are known for U.S. Census Bureau purposes as "Black" and

"Hispanic") voting age citizens who reside in Phoenix Union High School District No. 210 ("PUHSD"), which is located in Maricopa County, Arizona.  Plaintiffs have alleged, among other things, that A.R.S. § 15-427(A), as applied in PUHSD by defendants to require at-large elections violates Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and the plaintiffs' rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

In order to conserve the Court's time and the resources of the parties, the parties have agreed to enter into this consent decree to settle all liability and relief issues arising out of this action.  This decree is final and binding upon the parties involved as well as upon their officers, agents, attorneys, employees and their successors, and all persons acting in concert or cooperation with them.

The parties agree to the jurisdiction of the Court over the questions raised by the complaint and resolved by this decree.  Defendants agree to waive any defenses they have or might have to this action as evidenced by the agreements contained in this decree and the signatures of the parties and counsel below.

The parties hereby stipulate, as evidenced by the signatures hereto, that if proof were presented in this matter, the Court would be justified in making the following findings and conclusions of law in support of this decree, as though made after a trial on the merits in conformity with Rule 52 of the Federal Rules of Civil Procedure.

## I.      FINDINGS AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action and over the parties thereto by virtue of 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 42 U.S.C. 1973j(f).  This action is brought pursuant to Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and 42 U.S.C. § 1983.  Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. § 2201, et seq.  Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b).  The Court's jurisdiction extends to the consideration and disposition of all

issues relating to alleged voting rights violations by defendants in or with regard to PUHSD.

Parties

2.     The plaintiffs in this action are minority voting age citizens who reside in PUHSD, which is located in Maricopa County, Arizona.  Each plaintiff is registered to vote and is a leader in his or her respective community.

3.     Plaintiff Julieta Bencomo is an Hispanic resident of PUHSD.

4.     Plaintiff Dr. George Brooks is an African-American resident of PUHSD.

5.     Plaintiff Sandra Kennedy is an African-American resident of PUHSD.

6.     Plaintiff Joe Eddie Lopez is an Hispanic resident of PUHSD.

7.     Plaintiff Hilda Ortega-Rosales is an Hispanic resident of PUHSD.

8.     Plaintiff Samuel Peter Ramirez is an Hispanic resident of PUHSD.

9.     Plaintiff Fernando Ruiz is an Hispanic resident of PUHSD.

10.     Plaintiff Pastor Warren Stewart is an African-American resident of PUHSD.

11.     Plaintiff Winston Tease is an African-American resident of PUHSD.

12.     Defendant PUHSD is a political subdivision of the State of Arizona, and as such, is subject to the requirements of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.  The members of the PUHSD Governing Board, Judith Pettit, Mary Price, David Wood, Linda Lafoy and Scot Butler, III, are sued in their official capacities.  The obligations set forth in this decree that apply to individual defendants named in this paragraph shall cease to apply to those persons after their term of office expires.

13.     Defendant Maricopa County is a political subdivision of the State of Arizona, and as such, is subject to the requirements of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.  The Maricopa County Board of Supervisors is the governing body of Maricopa County and has the power to divide the County into districts or precincts, as required by law.  Defendants Maricopa County Board of Supervisors and the Maricopa County School Superintendent bear responsibility for the administration of

3

A.R.S. § 15-427(A).  The Maricopa County School Superintendent, Sandra E. Dowling, and the members of the Maricopa County Board of Supervisors, Jim Bruner, Betsey Bayless, Carole Carpenter, Tom Freestone and Ed Pastor, are sued in their official capacities.  The obligations set forth in this decree that apply to individual defendants named in this paragraph shall cease to apply to those persons after their term of office expires.

Voting Rights Act

14.     As public officials, the defendants must comply with the terms of A.R.S. § 15-427(A).  This compliance with Arizona law, when contrasted with the provisions of Section 2 of the Voting Rights Act of 1965, as amended, has the effect and result of diluting the vote of minority citizens on account of their race or color, thereby denying minorities an equal opportunity to participate in the political process and to elect candidates of their choice.

15.     The Supreme Court has held that when a minority group can demonstrate: (1) that it is sufficiently large and geographically compact to constitute a majority in a single member district; (2) that it is politically cohesive; and (3) that Anglo bloc voting usually thwarts election of minority candidates, the prerequisites to the proof of causal connection between the electoral system and the dilution of voting power have been met. This is particularly true when the adverse result for which the plaintiffs seek a remedy is traceable ultimately to the impact of a certain electoral law, practice or structure interacting with social and historical conditions.  See Thornburg v. Gingles, 478 U.S. 30, 50-51 & nn.16-17 (1986); Gomez v. City of Watsonville, 863 F.2d 1407, 1411-13 (9th Cir. 1988), cert. denied, 109 S. Ct. 1534 (1989).

16.     The PUHSD Governing Board presently consists of five members, all of whom are elected at-large by voters of the PUHSD.  Each candidate must be a resident of the district.  The members serve staggered four year terms.  The election is non-partisan and the candidates receiving the highest number of votes are elected for the number of available seats.

4

17.     The minority citizens residing within the PUHSD boundaries are a sufficiently large and geographically compact group to constitute a majority of two single-member districts out of five that could be created within PUHSD.

18.     The minority citizens residing within the PUHSD boundaries are politically cohesive.

19.     The Anglo majority in PUHSD Governing Board elections in the 1980's has voted sufficiently as a bloc to enable it usually to defeat minority candidates for the PUHSD Governing Board.  Thus, despite a substantial minority voting population (and a minority enrollment in PUHSD schools approaching fifty percent), the at-large election barrier in conjunction with racially polarized voting has enabled the Anglo majority usually to defeat the chosen candidates of minority voters.

20.     The Court may consider the history of racial discrimination in the District in determining whether there has been a violation of Section 2 of the Voting Rights Act, as amended.  Before the election of the present Governing Board, there is historical evidence of racial discrimination in the areas of education, employment, politics and economics in Arizona.  This historical discrimination serves, inter alia, as the foundation of the requirement that any change in voting practices (pursuant to Section 5 of the Voting Rights Act of 1965) must receive preclearance from the United States Attorney General or the United States District Court of the District of Columbia.  42 U.S.C. § 1973(c). Minorities in Arizona have historically suffered from and continue to suffer from the effects of racial discrimination in areas such as education, employment, politics and economics.

21.     The findings and factors discussed above, when considered together and cumulatively, along with others required by law, and in light of the application, custom, policy and usage of A.R.S. § 15-427(A) establish that the application in PUHSD of A.R.S. § 15-427(A), which mandates at-large elections of members of union high school district governing boards, dilutes the voting strength of the minority citizens, thereby denying

1  them, on account of their race or color, an equal opportunity to participate in the political

2  process and to elect candidates of their choice to the PUHSD Governing Board.

3       22.    The Court, therefore, finds and concludes that the current method of at-large

4  election of the PUHSD Governing Board as mandated by A.R.S. §15-427(A) violates

5  Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, and plaintiffs'

6  rights thereunder.

7       23.    The plaintiffs have no plain, adequate or complete remedy at law to redress

8  these violations of Section 2 of the Voting Rights Act and will suffer irreparable injury

9  from the continued application of A.R.S. § 15-427(A), unless this Court enjoins all further

10  elections pursuant to that statute in PUHSD.

11       24.    This Court has an obligation to eliminate and prevent violations of the

12  Voting Rights Act.  Once the Court finds a violation of Section 2 of the Voting Rights

13  Act, it should exercise its equitable powers to fashion the relief so that it completely

14  remedies the prior dilution of minority voting strength and fully provides equal

15  opportunity for minority citizens to participate in the electoral process and to elect

16  candidates of their choice.  The Court will retain jurisdiction for the purpose of

17  supervising and enforcing the implementation of the remedies set forth below.

18                  II.     GENERAL PROVISIONS

19       25.    Plaintiffs are granted a declaratory judgment, pursuant to 28 U.S.C. § 2201,

20  that the current method of at-large election of the PUHSD Governing Board as mandated

21  by A.R.S. § 15-427(A), and implemented by defendants, violates Section 2 of the Voting

22  Rights Act of 1965, as amended, 42 U.S.C. § 1973, and that their rights under Section 2

23  of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, have been violated on

24  account of the dilution of minority voting strength, which has denied minority citizens an

25  equal opportunity to elect candidates of their choice to the PUHSD Governing Board.

26       26.    Defendants, their officers, agents, attorneys, employees and their

27  successors, and all persons acting in concert or cooperation with them or at their direction

28  or under their control, hereafter "defendants," consent to and are hereby permanently

enjoined from holding further at-large elections different than those allowed by this Consent Decree of members to the PUHSD Governing Board, from seating any such at-large elected candidates, and from taking any other actions consistent with maintaining the at-large system of election declared herein to violate Section 2 of the Voting Rights Act of 1965, as amended.

27.    Defendants consent to and are therefore ordered to take forthwith all legally required steps to eliminate and prevent further violations of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973, including but not limited to those that will eliminate the effect or result of the violations found above and the effect or result of denying or abridging the rights of minority citizens residing in PUHSD to vote on account of their race or color by diluting their voting strength, thereby denying them an equal opportunity to participate in the political process and to elect candidates of their choice to the PUHSD Governing Board.

28.    The PUHSD Governing Board elections scheduled to be held on November 6, 1990, and subsequent elections to fill the PUHSD Governing Board shall be conducted according to the mixed single-member district and at-large/limited voting plan described below (the "Settlement Plan").  Under this Settlement Plan, the size of the Board will expand in November 1990 from five to seven members.  Once the Settlement Plan is fully and completely implemented, two members of the Board shall be elected together on an at-large basis in which the entire school district will comprise the electoral district, through the use of the limited voting mechanism described in paragraph 32, infra.  The elections at which these two at-large seats shall be contested shall coincide with presidential elections.  Five other members shall be elected from five single-member districts into which the school district shall be divided as provided in paragraphs 35 through 45.  The single-member district elections shall coincide with congressional -- or "off-year" -- elections.  The Governing Board elections to be held in November 1990 and November 1992 will be used to phase-in this Settlement Plan, so that the permanent elections cycle is established for the 1994 and 1996 elections, and is utilized thereafter.

29.   <u>Schedule of Governing Board Elections</u>:  The Settlement Plan to which the parties have agreed and which is ordered in this Consent Decree shall be implemented according to the following schedule:

| | | |
|---|---|---|
| November 1990: | District 1 | (2-year term) |
| | District 2 | |
| | District 3 | |
| | District 4 | |
| November 1992: | District 1 | (2-year term) |
| | District 5 | (2-year term) |
| | At-Large 1 | |
| | At-Large 2 | |
| November 1994: | District 1 | |
| | District 2 | |
| | District 3 | |
| | District 4 | |
| | District 5 | |
| November 1996: | At-Large 1 | |
| | At-Large 2 | |

Pursuant to the Settlement Plan, all subsequent regular school board elections in "off-year" and presidential election years shall follow the elections models utilized in 1994 and 1996, respectively.  Except as otherwise specified in the schedule above, or as required to fill a vacancy as provided by law, all elections shall be for four (4) year terms of office.

30.   <u>Residency requirement</u>:  A person who is a registered voter of Arizona and has been a resident of PUHSD for one year immediately preceding the day of election is eligible for election to an at-large seat on the PUHSD Governing Board; <u>see</u> Ariz. Rev. Stat. Ann. § 15-421(C).  A person who is a registered voter of Arizona and has been a resident of the single-member district within PUHSD for one year immediately preceding the day of election is eligible for election to that single-member district seat on the PUHSD Governing Board.  A person appointed by the Maricopa County School

Superintendent to a PUHSD Governing Board vacancy, see Ariz. Rev. Stat. Ann. § 15-302(7), must meet the appropriate residency requirement set forth in this paragraph and applicable to the particular vacancy (i.e., at-large or single-member district) as if the date of appointment were the date of election.  A person duly elected or appointed shall be deemed to have vacated the office if any of the events in A. R. S. § 38-291 occur.  As applied here, the word, "district", used in A.R.S. § 38-291(5) shall mean the district from which the person was elected or appointed.

31.  Nomination petition signature requirement:  For a candidate for an at-large seat on the PUHSD Governing Board, nomination petitions must be signed by a number of qualified electors who are qualified to vote for the candidate whose nomination petition they are signing equal to at least one percent of the vote in PUHSD as currently provided for by Ariz. Rev. Stat. Ann. § 16-322(A)(10), or as may be modified by statute.  For a candidate for a single-member district seat on the PUHSD Governing Board, nomination petitions must be signed by a number of qualified electors who are qualified to vote for the candidate whose nomination petitions they are signing equal to at least one percent of qualified electors within that single-member district, or as currently provided for by statute.  See Ariz. Rev. Stat. Ann. §16-322(A)(11).   The basis of calculating this percentage for the November 1990 and November 1992 elections shall be the highest vote cast for a candidate for the Governing Board from the precincts within the relevant electoral district (i.e., single-member or at-large) as if such districts existed at the November 1988 election. See Ariz. Rev. Stat. Ann. § 16-322(B).  Beginning in 2022 and thereafter, the basis of calculating this percentage shall be as provided in Ariz. Rev. Stat. Ann. § 16-322(B), or as may be modified by statute.

32.  Conduct of at-large elections:  The at-large seats that shall be contested in 1992, 1996, and thereafter shall be elected together in a single race through a two-seat "limited voting" system, whereby each voter will be entitled to cast only one vote for the candidate of his or her choice for the two at-large seats at stake.  The two candidates with the highest vote shall be elected.

33.   <u>Conduct of single-member district elections</u>:   The candidate receiving the highest vote in a single-member district election shall be elected.

34.   <u>Redistricting</u>:   On or before April 1, 1992, and on each tenth anniversary thereafter, the PUHSD Governing Board shall define the boundaries and limits of each single-member district and make such division equal or as nearly equal in population as is practicable and conforms in all respects to all substantive and procedural requirements of Sections 2 and 5 of the Voting Rights Act (hereafter referred to as "redistricting").   Due to delays in release of the 2020 decennial United States census data, the PUHSD Governing Board is granted a six-month extension to complete its 2022 redistricting plan under this paragraph, and may utilize the last precleared redistricting plan for purposes of the 2022 regular school board elections.   If in subsequent years the April 1 redistricting deadline precedes the next regular school board elections scheduled under paragraph 29 by less than twelve months, the PUHSD Governing Board may utilize the last precleared redistricting plan for purposes of those elections scheduled within twelve months of the April 1 redistricting deadline.

35.   <u>Single-member district boundaries (District 1)</u>:   The boundaries of the single-member electoral District 1 are as follows:   the westernmost point of District 1 is located at the juncture of the PUHSD boundary and the bed of the Salt River at 83rd Avenue, with the District 1 border proceeding thence east along the riverbed to 35th Avenue, thence north to Buckeye Road, thence west to 43rd Avenue, thence north to McDowell Road, thence west to 55th Avenue, thence north to Thomas Road, thence east to 27th Avenue, thence south to McDowell Road, thence east to Black Canyon Freeway (Interstate 17), thence south to Van Buren Street, thence east to Central Avenue, thence south to the bed of the Salt River, thence east along the riverbed to 7th Street, thence south to Southern Avenue, thence west to Central Avenue, thence south to Carter Road, thence east to 7th Street, thence south to Baseline Road, thence west to 7th Avenue, thence south to Olney Avenue, thence west to 15th Avenue, thence south to the border of South Mountain Park, thence southwesterly along the park border to its juncture with the

1   southwestern boundary of Phoenix Union, thence proceeding northwesterly along the

2   PUHSD boundary (i.e., the shared boundary with the Gila River Indian Reservation) to

3   the beginning point of District 1 at the juncture of 83rd Avenue and the bed of the Salt

4   River.

5        36.     Currently, the following Maricopa County precincts are included within

6   District1: Cottonwood, Sheridan, Vernon, Lewis, Coe, Isaac, Harris, Zito, Brown,

7   Almeria, Belleview, Latham, Butler, Hayden High, Willow Park, Sullivan, Harrison,

8   Jackson, Dunbar, Lowell, Murphy, Bethune, Cash, Roeser, Southern, Broadway,

9   Sunland, Rio Vista, Laveen*, Olney, Lassen, Valley View, and Hope.  Precincts marked

10   with an asterisk ("*") lie only partly within PUHSD.  Only the portions of these precincts

11   that are within PUHSD are included in the single-member district.

12        37.     Single-member district boundaries (District 2):  The boundaries of the

13   single-member electoral District 2 are as follows:  the southernmost point of District 2 is

14   located at the juncture of the PUHSD boundary and the southern border of South

15   Mountain Park at 43rd Avenue, with its border proceeding thence generally northeasterly

16   along the park border to 15th Avenue, thence north to Olney Avenue, thence east to 7th

17   Avenue, thence north to Baseline Road, thence east to 7th Street, thence north to Carter

18   Road, thence west along the riverbed to Central Avenue, thence north to Southern

19   Avenue, thence east to 7th Street, thence north to the bed of the Salt River, thence west

20   to Central Avenue, thence north to Van Buren Street, thence west to the Black Canyon

21   Freeway (Interstate 17), thence north to McDowell Road, thence east to 16th Street,

22   thence north to Thomas Road, thence east to 32nd Street, thence south to McDowell Road,

23   thence east to 48th Street, thence south to the juncture of the bed of the Salt River and the

24   PUHSD boundary, thence proceeding clockwise along the PUHSD boundary (i.e., west

25   to 40th Street; south to the South Mountain Park border; and southwesterly through the

26   park) to the beginning point of District 2 at the juncture of the PUHSD boundary and the

27   southern border of South Mountain Park at 43rd Avenue.

28

38. Currently, the following Maricopa County precincts are included with District 2: Cambridge, Machan, Edgemont, Perry Park, Palm, St. Agnes, Creighton, Strawberry, Sutton, Franklin, Kenilworth, YMCA, Willetta, McKinley, Garfield, Hunt, Edison, Del Rey, Moreland, King, Crockett, Portland, Balsz, Taylor, East High, Monroe, Parkview, Longfellow, Sky Harbor*, Hilton, Skiff, South Mountain High, Southminster, Julian, Palmdale, Roosevelt, Greenfield, Sierra Vista, Hermosa, Vineyard, Gary, Euclid, Park*, Thunderbird*, Barr*, and Winston*. Precincts marked with an asterisk ("*") lie only partly within PUHSD. Only the portions of these precincts that are within PUHSD are included in the single-member district.

39. <u>Single-member district boundaries (District 3)</u>: The boundaries of the single-member electoral District 3 are as follows: the southernmost point of District 3 is located at the juncture of the PUHSD boundary and the bed of the Salt River at 48th Street, with its border proceeding thence north to McDowell Road, thence west to 32nd Street, thence north to Thomas Road, thence west to 16th Street, thence north to Indian School Road, thence west to Central Avenue, thence north to Camelback Road, thence east to 7th Street, thence north to Glendale Avenue, thence west to the PUHSD boundary at 7th Avenue, thence proceeding clockwise along the PUHSD boundary (<u>i.e.</u>, north to Northern Avenue; east along Northern Avenue and the Dreamy Draw into the Squaw Peak Mountain Preserve, dropping to an easterly line through the preserve as if Northern Avenue continued its course; south through the preserve along a line as if 40th Street continued its course, and south along 40th Street to Thomas Road; east to 64th Street; south along a line through Papago Park as if 64th Street continued, to Van Buren Street; west to 56th Street; south to the bed of the Salt River; and west along the riverbed) to the beginning point of District 3 at the juncture of 48th Street and the bed of the Salt River.

40. Currently, the following Maricopa County precincts are included in District 3: Wagon Wheel, Wilder, Hayward, Pomona, Winter, Simis, Desert Park, Sumida Park, Nicol, Madison Heights, Joshua*, Lawrence, Citrus, Majorca, Desert Crest, Berridge, Redwood, Rovey, Bethany, Plaza, Fern, Rancho, Horseshoe, Madison 1, San Juan,

Madison 3, Greentree, Indigo, Biltmore, Palo Cristi, South Bank, Xavier, Central High, Meadowbrook, Falcon, Colonnade, Madison 2, St. Thomas, Camelback High, Heather, Mission Hills, Brentwood, Squaw Peak, Monterosa, Oaktree, Glenrosa, Cornell, Avalon, Tuscan, Curnow, Lafayette, Cavalier, Ruby, Amelia, Eastside, Loma Vista, Montevista, Jade, Suncrest, Harvard, Holly, Tower, Papago, Yale, Drake, Thomas, Pierce, Geronimo, Griffith, Powell, Chestnut, Barnes, and Gardens*.  Precincts marked with an asterisk ("*") lie only partly within PUHSD.  Only the portions of these precincts that are within PUHSD are included in the single-member district.

41.    Single-member district boundaries (District 4):  The boundaries of the single-member electoral District 4 are as follows:  the northernmost point of District 4 is located at the juncture of the PUHSD boundary and Glendale Avenue at 7th Avenue, with its border proceeding thence east to 7th Street, thence south to Camelback Road, thence west to Central Avenue, thence south to Indian School Road, thence east to 16th Street, thence south to McDowell Road, thence west to 27th Avenue, thence north to Thomas Road, thence west to 35th Avenue, thence north to Camelback Road, thence west to 43rd Avenue, thence north to Glendale Avenue, thence proceeding clockwise along the PUHSD boundary (i.e., east to 35th Avenue, south to Bethany Home Road; east to 7th Avenue; and north to Glendale Avenue) to the beginning point of District 4 at the juncture of Glendale Avenue and 7th Avenue.

42.    Currently, the following Maricopa County precincts are included with District 4:  Barcelona, Flynn, Keim, Catalina, Walnut, Lamar, Meadows, Concord, Medlock, Denton, Sevilla, Georgia, Cordova, Luke, Grand Canyon, Montebello, Marshall, Oregon, Solano, Nile, Pasadena, Hall, Mt. Calvary, Calico, Rose Lane, Valencia, Lemon Tree, Granada, Lynhaven, Westwood, Elm, Silverado, Parada, Westminster, Westview, Grandview, Turney, Hazelwood, Carnation, Mulberry, Whitton, West High, St. Gregory, Flower, Clarendon, Mitchell, College, Osborn, Fairmount, Longview, Country Club, Cypress, Grand Avenue, Encanto, Palmcroft, Los Olivos, Wilshire, Monterey, North High, Emerson, Windsor, and Whittier.

43.   <u>Single-member district boundaries (District 5)</u>:   The boundaries of the single-member electoral District 5 are as follows:  the northernmost point of District 5 is located at the juncture of the PUHSD boundary and 43rd Avenue at Glendale Avenue, with its border proceeding thence south to Camelback Road, thence east to 35th Avenue, thence south to Thomas Road, thence west to 55th Avenue, thence south to McDowell Road, thence east to 43rd Avenue, thence south to Buckeye Road, thence east to 35th Avenue, thence south to the bed of the Salt River, thence west along the riverbed to the juncture of the PUHSD boundary and the riverbed at 83rd Avenue, thence proceeding clockwise along the Phoenix Union boundary (<u>i.e.</u>, northward from the riverbed along 71st Avenue to Roeser Road; east to 67th Avenue; north to Lower Buckeye Road; east to 59th Avenue; north to McDowell Road; west to 83rd Avenue; north to Camelback Road; east to 59th Avenue; north to Bethany Home Road; east to 47th Avenue, north to Glendale Avenue; and east to 43rd Avenue) to the beginning point of District 5 at the juncture of Glendale Avenue and 43rd Avenue.

44.   Currently, the following Maricopa County precincts are included within District 5:  Glendale 4, Glendale 9, Glendale 10, Glendale 20, Glendale 36, Coolidge, Sells, Clayton, Tomahawk, Minnezona, Heatherbrae, Holiday Gardens, Desert Sands, Lexington, Holiday Park, Pierson, MacKenzie, Andalucia, Long, Quail, Roadrunner, Alhambra, Grand Vista, Starlight, Cora, Sheila, Earll, Trevor Browne, Britton, Sunset, Hollyhock, Violet, Maryvale High, St. Vincent, Downs, Verde, Crittendon, Valentine, Cherry Lynn, Madrid, Westridge, Tumbleweed, Roanoke, Berkeley, Alvarado, Cartwright, Sun Dial, Sunridge*, and Riverside*.  Precincts marked with an asterisk ("*") lie only partly within PUHSD.  Only the portions of these precincts that are within PUHSD are included in the single-member district.

45.   The boundaries of these five single-member districts established pursuant to the Settlement Plan are graphically set forth on the PUHSD precinct maps attached hereto and incorporated by reference as Exhibits A through F to this Consent Decree.

46.   <u>Other Laws in force</u>:  All other statutes and laws governing the conduct of school board elections shall be applicable to PUHSD Governing Board elections so long as they are consistent with, and do not interfere with or obstruct, this Consent Decree and the implementation of the Settlement Plan.

47.   After approval of the Settlement Plan by the Court, the defendants shall take whatever actions are necessary to obtain preclearance of the plan in accordance with Section 5 of the Voting Rights Act of 1965.  Defendants' initial pre-clearance submission under Section 5 of the Voting Rights Act of 1965 shall be filed with the United States Department of Justice within ten (10) days of the Court's approval of the Settlement Plan and simultaneously provided to the Court and counsel for plaintiffs.  Plaintiffs and/or plaintiffs' counsel agree to cooperate with respect to the initial preclearance by, upon the request and at the expense of defendants, providing necessary information and making any appearances for purposes of securing preclearance under Section 5 of the Voting Rights Act.  Copies of all documents in addition to the initial preclearance submission that are submitted to or received from the Department of Justice for the purpose of compliance with Section 5 of the Voting Rights Act shall immediately be provided to the Court and counsel for plaintiffs.  If the Department of Justice does not preclear or reject the plan by July 31, 1990, the defendants shall implement this Settlement Plan on a provisional basis to ensure minority voters in PUHSD an equal opportunity to elect candidates of their choice to the PUHSD Governing Board in the 1990 election.

48.   If the Settlement Plan is rejected or not cleared by the United States Department of Justice or the United States District Court for the District of Columbia or were to be otherwise rejected by this or an appellate Court, the parties have agreed that the consent and agreement above as to liability under Section 2 of the Voting Rights Act shall, nevertheless, stand; and have agreed that a hearing limited solely to the issue of remedy shall commence as soon as the Court's schedule permits.  Should that hearing be necessary the parties will present an alternative recommended agreed upon plan or their

own separate plans, if unable to agree.  In that event, the Court shall order implementation of the plan that best assures equal opportunity to minority voters.

### III.    COSTS, EXPENSES AND ATTORNEYS' FEES

49.    The defendants shall pay plaintiffs' disbursements, costs, and reasonable attorneys fees, in such amount as the parties shall agree, or, in the absence of an agreement, in such amount as shall be determined by the Court.  Unless the parties have reached such an agreement beforehand, within sixty (60) days of the date of this decree counsel for plaintiffs shall submit to the Court a motion for their attorneys' fees, costs, and disbursements.  If such a motion is filed, the Court will rule promptly on the matter, and assess, and apportion among defendants, the amount of the costs, disbursements and fees.  Defendants shall also pay plaintiffs' disbursements, costs and reasonable attorneys' fees incurred subsequent to the date of this decree and related to this litigation, including but not limited to, all disbursements, costs and reasonable attorneys' fees in connection with the enforcement of this decree.  However, plaintiffs shall be entitled to an award of such attorneys' fees, disbursements, and costs for reasonable monitoring as the court deems appropriate.   Any disbursements, costs, and reasonable attorneys' fees for enforcement of this decree arising out of a breach of this decree shall be borne by the culpable defendant(s).  The parties have agreed that the Court shall, in the absence of an agreement of the parties and upon motion of the plaintiffs, determine the amount of such further attorneys' fees, costs, and disbursements.  All sums payable under this paragraph shall be payable within sixty (60) days of the Court's determination or they shall draw interest as provided by law.

50.    Neither the absence from this decree of any stated legal basis for relief asserted in the complaint or the plaintiffs' other submissions, nor the absence of any kind of relief or measure of relief, reflects upon the plaintiffs' degree of success in this action. This paragraph is designed to address the omission from this decree of relief with respect to 42 U.S.C. § 1983, it being the intention of the parties that omission of such relief shall have no bearing on the matter of attorneys' fees.

## IV.    RELEASE

51.    Full payment by defendants of all attorneys' fees, costs and disbursements as may be required or ordered from time to time under this decree shall constitute a full release for said sums by all named plaintiffs in this action with respect to defendants. Nothing contained in this decree, however, shall be construed as a release or waiver by any named plaintiffs of costs, disbursements and reasonable attorneys' fees wherever provided for in this decree for the enforcement of the terms of this decree, or as otherwise provided by law.

## V.    NON-RETALIATION

52.    Defendants shall not retaliate against any person for having participated in any way in this litigation; for having opposed any practice made unlawful by the Voting Rights Act or other laws of the United States or State of Arizona; for having aided, assisted or cooperated with plaintiffs or their counsel; for having reported any alleged violation of law or of this decree; or for having assisted any other person in so doing. This paragraph shall not be interpreted to limit any party's participation in any political campaign or campaign process.

## VI.    ORDER APPROVING CONSENT DECREE

53.    The Court having fully examined the provisions of this decree finds that the entire settlement is reasonable, just, and in accord with the Congressional purpose in enacting Section 2 of the voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 et seq. Further, the Court finds that the rights and interests of the parties under law are fully protected by this decree.  Therefore, the Court approves this settlement and compromise of this action.

## VII.    RETENTION OF JURISDICTION AND ENFORCEMENT

54.    This Court retains jurisdiction over this action for all purposes.

Dated this 29th day of November, 2021.

G. Murray Snow
Chief United States District Judge