D. Andrew Gaona (028414)
Austin C. Yost (034602)
Kelleen Mull (036517)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5486
agaona@cblawyers.com
ayost@cblawyers.com
kmull@cblawyers.com

*Attorneys for Non-Party Aden Ramirez*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Julieta Bencomo, Dr. George Brooks, Sandra Kennedy, Joe Eddie Lopez, Hilda Ortega-Rosales, Samuel Peter Ramirez, Fernando Ruiz, Pastor Warren Stewart and Winston Tease,<br><br>Plaintiffs,<br><br>vs.<br><br>Phoenix Union High School District No. 210, et al.,<br><br>Defendants. | No. 2:90-cv-0369-PHX-GMS<br><br>**NOTICE OF POSITION OF NON-PARTY ADEN RAMIREZ** |

In response to the Court's October 17, 2024 Order (Doc. 126), non-party Aden Ramirez provides the following positions before the hearing on October 24, 2024.

***First***, Mr. Ramirez does not object to being joined as a party to this lawsuit under Fed. R. Civ. P. 19 for the limited purpose of resolving how to proceed considering Maricopa County's ballot printing error.

***Second***, Mr. Ramirez does not seek to enjoin the election for the at-large position on the Phoenix Union High School District Governing Board ("Governing Board"), and *Purcell v. Gonzalez*, 549 U.S. 1, 7 (2006), counsels against such a drastic remedy. The *Purcell* principle

"reflects a bedrock tenet of election law: When an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (Mem.) (2022) (Kavanaugh, J., concurring). This is because "[c]ourt orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4–5. *Purcell* also seeks to prevent eleventh-hour "administrative burdens for election officials." *Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1031 (D. Ariz. 2022) (noting the public interest is best served by preserving existing laws "rather than by sending the State scrambling to implement and to administer a new procedure . . . at the eleventh hour"). Running elections is "extraordinarily complicated and difficult," poses "significant logistical challenges[,]" and requires "enormous advance preparations by state and local officials[.]" *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurring). As a result, plaintiffs seeking an injunction near an election must show the merits are "entirely clearcut" in their favor and "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Id.* at 881.

As explained below, it is not "clearcut" that enjoining the canvass of this election is a proper remedy. And "[w]e are not on the eve of the election—we are in the middle of it." *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020). Early voting is already underway, and election day is only 13 days away. Maricopa County, Early Voting for the November General Election Starts Today!, https://elections.maricopa.gov/news-and-information/elections-news/2024-November-General-Election-Early-Voting-Begins.html (last visited October 22, 2024). To enjoin the canvass of just this race, voters would also presumably need to be notified that their vote(s) for the Governing Board will not be counted, an eleventh-hour change that risks the very confusion that *Purcell* forbids. This Court should strive to do the least harm to voter trust in and understanding of the ongoing general election.

**Third**, Maricopa County's ballot printing error does not warrant federal intervention on the merits. Mr. Ramirez's preferred remedy is that the election proceed with the ballots as

printed (many of which have already been voted and returned). All votes should be counted, and the candidate with the most votes should prevail.

To determine whether an election problem warrants federal intervention, courts distinguish between "'garden variety' election irregularities and a pervasive error that undermines the integrity of the vote." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). "In general, garden variety election irregularities do not violate the Due Process Clause, *even if they control the outcome of the vote or election.*" *Id.* (emphasis added). Instead, a state or local election violates due process only if it is "conducted in a manner that is fundamentally unfair." *Id.* "[A] court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Id.* at 1226–27.

Thus, "[m]ere fraud or mistake will not render an election invalid." *Id.* at 1226 (holding that the Hawaii Supreme Court's later clarification of state law to count 45,000 blank ballots as cast ballots amounted to "a garden variety election irregularity," and not a substantive due process violation); *see Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005) ("[A] malfunctioning voting machine that simply failed to register votes on one of the lines—is an unfortunate but unintended irregularity, and as such, differs significantly from purposeful state conduct directed at disenfranchising a class or group of citizens."); *Lecky v. Va. State Bd. of Elections*, 285 F. Supp. 3d 908, 917–18 (E.D. Va. 2018) (finding an error—giving over 350 voters ballots for the wrong house district—was "garden variety" because the plaintiffs "provided no indication that the failure was other than simple negligence on the part of the [defendants]"). Cases justifying federal intervention have involved attacks "upon the fairness of the official terms and procedures under which the election was conducted" and did not require courts to "enter into the details of the administration of the election." *Griffin v. Burns*,

570 F.2d 1065, 1078 (1st Cir. 1978) (finding retroactive invalidation of ten percent of the ballots cast constituted "broad-gauged unfairness" because the distribution of the invalidated ballots was an "officially sponsored election procedure which, in its basic aspect was flawed").

Here, the ballot printing mistake is a "garden variety" error that does not justify enjoining the canvass of the Governing Board election. Maricopa County misprinted the ballots for the Governing Board by including instructions to vote for up to two candidates. Voters should have instead been instructed to vote for one candidate. This was a clerical error akin to malfunctioning voting machines or providing voters ballots for the wrong district. *See Shannon*, 394 F.3d at 96; *Lecky*, 285 F. Supp. 3d at 917–18. Such a mistake should not justify intervention even if it "*control[s] the outcome of the vote or election*." *Bennett*, 140 F.3d at 1226 (emphasis added).

*Krieger v. City of Peoria* does not dictate otherwise. No. CV-14-01762, 2014 WL 4187500, at *5 (D. Ariz. Aug. 22, 2014). There, the defendants mistakenly printed and mailed two rounds of ballots for an upcoming election that did not include the name of one of the candidates. *Id.* The court found federal intervention warranted because, given the defendants' response to the error, a "significant percentage" of the votes cast would be on ballots omitting the plaintiff's name. *Id.* The court emphasized, however, that the plaintiffs there were not challenging the election officials' mistake in printing the wrong ballots, which "were unintended irregularities." *Id.* Instead, the plaintiffs challenged "the official action taken by Defendants to remedy those errors," namely the election official policy that votes cast on the misprinted ballots would be counted, even though the misprinted ballots omitted one candidate's name. *Id.*

Here, in contrast, the printing error did not omit a candidate. And unlike *Krieger*, where the defendants adopted a confusing policy that compounded the error, Maricopa County swiftly identified the mistake and raised it with the Court. Because there is no official action at issue, and the error does not broadly affect the fairness of the terms and procedures of the election,

the printing error does not justify court intervention. Indeed, requiring a special election is likely to significantly affect voter turnout, which could alter the course of the election *more than* preserving the status quo. *Compare* November General Election Canvass, https://elections.maricopa.gov/asset/jcr:f0e64083-5801-4077-8675-07a8ba475c43/11-03-2020-0%20Canvass%20COMPLETE_%20NOV2020.pdf (last visited October 22, 2024) (80.51% turnout), *with* Maricopa County Special Election, November 7, 2023, https://elections.maricopa.gov/asset/jcr:79e89c1a-1515-46dc-85ed-a2663fef682c/11-07-2023-1%20PHOENIX%20Final%20Summary%20Report.pdf (last visited October 22, 2024) (21.93% turnout). The consent decree was implemented because "despite a substantial minority voting population (and a minority enrollment in PUHSD schools approaching fifty percent), the at-large election barrier in conjunction with racially polarized voting has enabled the Anglo majority usually to defeat the chosen candidates of minority voters." [Doc. 111 ¶ 119] Holding a special election where turnout is significantly lower would disenfranchise the same voters the decree is designed to protect. This Court should thus allow the election to proceed with the ballots as printed to ensure that the maximum number of voices can be heard in choosing the next member of the Governing Board.

Respectfully submitted this 23rd day of October, 2024.

**COPPERSMITH BROCKELMAN PLC**

By /s/ D. Andrew Gaona
      D. Andrew Gaona
      Austin C. Yost
      Kelleen Mull

*Attorney for Non-Party Aden Ramirez*