Roy Herrera (032901)
Daniel A. Arellano (032304)
Austin T. Marshall (036582)
**HERRERA ARELLANO LLP**
1001 North Central Avenue, Suite 404
Phoenix, Arizona 85004
roy@ha-firm.com
daniel@ha-firm.com
austin@ha-firm.com
Telephone: (602) 567-4820

*Counsel for Plaintiff Aaron Marquez*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Julieta Bencomo, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>Phoenix Union High School District No. 210, et al.,<br><br>          Defendants. | No. 2:90-cv-0369-PHX-GMS<br><br>**AARON MARQUEZ'S BRIEF REGARDING THE REMEDY**<br><br>(Assigned to the Hon. G. Murray Snow) |

In accordance with the Court's October 25, 2024 Order directing the parties to brief the Court on their respective preferred remedies for the Amended Consent Decree's violation, Phoenix Union High School District at-large candidate Aaron Marquez respectfully requests that the Court dissolve its injunction preventing Maricopa County from canvassing the election that concluded on November 5, 2024. Invalidating the results of an election in which the voters have already selected their preferred candidates and holding a special election next year is not proportionate to the circumstances.

## I. BACKGROUND

While early voting for the 2024 general election was underway in October of this year, Defendants Maricopa County and the Maricopa County Board of Supervisors informed the Court that they had inadvertently violated the Consent Decree (Doc. 111) that governs how elections for the Phoenix Union High School District No. 210 are to be run. (Doc. 121.) The Maricopa County Defendants specified that "despite the requirement of the Consent Decree that voters be allowed to vote for only one candidate [for the two at-large board positions], the ballots for the November 5, 2024, election had been printed with instructions directing voters to vote for up to two candidates." (*Id.* at 3).

The Court held two hearings to address the matter. (Docs. 125, 135.) Following the second hearing, the Court ordered on October 25, 2024, that Mr. Marquez and the other candidates for the at-large board positions be joined as plaintiffs for the limited purpose of determining the remedy. (Doc. 136 at 2.) It further ordered that "the parties shall brief (1) their preferred remedy in this matter and (2) if the remedy ends up being a special election, any arguments about necessary procedures in the conduct of the election and their position about district governance pending the election." (*Id.*) In the meantime, while the Court considers the proper remedy, it enjoined "any canvass for the two at-large seats on the Phoenix Union High School District Governing Board that are included in the November 5, 2024 election." (*Id.*)

## II. ARGUMENT

### A. The Court should dissolve its October 25 injunction and not order a special election.

"[T]he right to vote is fundamental, but a federal court cannot lightly interfere with or enjoin a state election." *Sw. Voter Registration Educ. v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003); *see also Mont. Chamber of Com. v. Argenbright*, 226 F.3d 1049, 1058 (9th Cir. 2000) ("[T]he voiding of a state election is a 'drastic if not staggering' remedy." (citation omitted)). "The decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional

1  violation." *Id.* (citing cases). "A federal court reaching into the state political process to
2  invalidate an election necessarily implicates important concerns of federalism and state
3  sovereignty. It should not resort to this intrusive remedy until it has carefully weighed all
4  equitable considerations." *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d
5  1176, 1180 (9th Cir. 1988) (quoting *Gjersten v. Bd. of Election Comm'rs*, 791 F.2d 472,
6  478 (7th Cir.1986)). "In determining whether such drastic relief is warranted, courts have
7  focused on several key considerations, including the nature and severity of the federal
8  violation, the probability that it actually affected the election result, the presence or absence
9  of culpable intent, and the harm to the organic processes of the election." *Putter v.*
10 *Montpelier Pub. Sch. Sys.*, 697 A.2d 354, 357 (Vt. 1997) (summarizing federal case law).

11 Invalidating the election that has already occurred is not warranted. The Consent
12 Decree sought to address violations of "Section 2 of the Voting Rights Act of 1965, as
13 amended, 42 U.S.C. § 1973, and plaintiffs' rights thereunder." (Doc. 111 at 6 ¶ 22.) While
14 these rights and interests are critically important, and the Court is right to be concerned with
15 safeguarding them, Maricopa County's unintentional mistake in violating the Consent
16 Decree does not rise to the level that calls for such a drastic federal response. *See Putter*,
17 697 A.2d at 357 ("Dilution of votes through malapportioned districts . . . *purposeful or*
18 *systematic* discrimination against voters of a certain class . . . *pervasive* election fraud . . .
19 and 'other *wilful conduct* which undermines the organic processes by which candidates are
20 elected,' . . . represent the kinds of violations for which courts have typically employed the
21 new-election remedy." (emphasis added) (federal case citations omitted)).

22 Until this recent infraction, Maricopa County has complied with the Consent Decree
23 and administered Phoenix Union High School District elections according to its mandates.
24 There was no intentional, purposeful, or systematic conduct that caused this specific
25 violation. On its own accord, the County promptly brought its violation to the Court's
26 attention and sought to fix the situation. And it has already "implemented safeguards to
27 ensure future ballots follow the Consent Decree" and prevent mistakes like this from
28 happening again. (*See* Doc. 121-1 at 4 (declaration of Maricopa County Elections Director

Scott Jarrett).) Accordingly, a drastic remedy like invalidating the election and ordering a special election would be disproportionate to the circumstances.

Further, two other considerations counsel against invalidating the election: competing provisions in the Consent Decree and the prejudice it would cause to the candidates.

*First*, this situation puts two provisions of the Consent Decree in tension. The Consent Decree requires both that: 1) the two at-large seats "shall be elected together in a single race through a two-seat 'limited voting' system, whereby each voter will be entitled to cast only one vote for the candidate of his or her choice for the two at-large seats at stake;" and 2) that "[t]he elections at which these two at-large seats shall be contested shall coincide with presidential elections." (Doc. 111 at 9 ¶ 32, 7 ¶ 28.)

Ordering a special election to be held next year would also violate the consent decree, as an election in 2025 would not coincide with a presidential election. As fellow candidate Aden Ramirez previously briefed the Court, turnout during such a special election would likely see a drastic drop off in turnout compared to the election that just occurred. (Doc. 131 at 5.) The Consent Decree notes that this Court should use its equitable powers to provide relief that "fully provides equal opportunity for minority citizens to participate in the electoral process and to elect candidates of their choice." (Doc. 111 at 6.) In this specific instance—and likely this specific instance alone—the Consent Decree's goals and purpose of protecting minority voting efficacy are likely best served by prioritizing *when* the election is held rather than *how many* candidates voters may select at the election.

*Second*, cancelling the prior election and compelling the candidates to re-run their campaigns would cause prejudice. Campaigns are time- and resource-intensive endeavors for both the candidates and Maricopa County. *See Gjersten*, 791 F.2d at 479 ("Special elections not only disrupt the decision-making process but also place heavy campaign costs on candidates and significant election expenses on local government."). Through no fault of Mr. Marquez or the other candidates, a special election would compel each to fundraise, take time to canvass and call voters about their candidacy, order new campaign materials,

and educate voters who may be confused as to why there is a second election for a race on which the voters already weighed in. *Cf. Purcell v. Gonzalez*, 549 U.S. 1, 7 (2006) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls."); *Soltysik v. Padilla*, 910 F.3d 438, 446–47 (9th Cir. 2018) ("avoiding voter confusion" is "an important government interest").

Moreover, Mr. Marquez is set to take his seat in the Arizona House of Representatives when the 2025 regular session starts on January 13, 2025. Ariz. Const. art. IV, pt. 2, § 3 ("The sessions of the legislature shall be held annually at the capitol of the state, and shall commence on the second Monday of January of each year."); Ariz. Sec'y of State, State of Arizona Official Canvass 10 (Nov. 25, 2024), https://apps.azsos.gov/election/2024/ge/canvass/20241105_GeneralCanvass_Signed.pdf (indicating that Mr. Marquez was elected as a State Representative from legislative district 5). Assuming a special election would be held in March 2025, the next available election day contemplated by Arizona law, A.R.S. § 16-204(B)(1), Mr. Marquez will be attending to his new duties as a legislator—during the busy legislative session—for the entire special election period, prejudicing his ability to run a second campaign for the school board with the same effort as he just did.

**B.    If the Court orders a special election, the current office holders continue to hold their school board seats until the special election occurs.**

If the Court nonetheless invalidates the November 5 election results and orders a special election to be held, Mr. Marquez does not propose any other necessary procedures in the conduct of the election. But Mr. Marquez maintains that, as a current office holder of one of the two at-large seats, under Arizona law he continues to hold that office until the special election is held.

Under the Arizona Constitution, "[t]he term of office of every officer to be elected or appointed under this Constitution or the laws of Arizona shall extend until his successor shall be elected and shall qualify." Ariz. Const. art. XXII, § 13; *see also* A.R.S. § 38-295(B)

1  ("Every officer shall continue to discharge the duties of the office, although the term has
2  expired, until a successor has qualified."). "The statute allowing officials to hold over until
3  their successors qualify is designed to prevent vacancies in office . . . ." *State v. Macias*,
4  162 Ariz. 316, 319 (App. 1989).

Until this Court lifts its injunction preventing Maricopa County from canvassing the November 5, 2024 general election results or until a special election concludes, no qualified successor has been elected. Accordingly, the two current at-large board members continue as "hold-overs" in office. *See* Ariz. Op. Atty. Gen. No. I80-161, 1980 WL 28042, at *2 (Aug. 18, 1980) ("[O]fficers whose terms expire within the above-mentioned period must also 'hold over,' until [next the general election]. This date is the date upon which 'successor[s] shall be elected and shall qualify.'").

## III. CONCLUSION.

For reasons above, Mr. Marquez requests that the Court lift its injunction preventing Maricopa County from canvassing the November 5, 2024 election results for the two at-large seats on the Phoenix Union High School District Governing Board and allow the winning candidates to be seated as if the Consent Decree had been followed. Recognizing that Maricopa County violating the Consent Decree was an inadvertent mistake, and that Maricopa County in good faith is instituting new procedures to prevent such a mistake in the future, any other course of action would only compound the violation's harm.

But if the Court invalidates the election results from the November 5 general election and orders a special election to be held, Mr. Marquez and his current at-large seatmate on the Phoenix Union High School District Governing Board should continue to hold their seats until the special election occurs.

Respectfully submitted this 26th day of November, 2024.

**HERRERA ARELLANO LLP**

By: */s/ Austin T. Marshall*
    Roy Herrera
    Daniel A. Arellano
    Austin T. Marshall
    1001 North Central Avenue, Suite 404
    Phoenix, Arizona 85004

*Counsel for Plaintiff Aaron Marquez*

## CERTIFICATE OF SERVICE

On this day, November 26, 2024, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system upon all counsel of record.

*/s/ Austin T. Marshall*