RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: Thomas P. Liddy (Bar No. 019384)
Joseph E. La Rue (Bar No.031348)
Rosa Aguilar (Bar No. 037774)
Deputy County Attorneys
liddyt@mcao.maricopa.gov
laruej@mcao.maricopa.gov
aguilarr@mcao.maricopa.gov

CIVIL SERVICES DIVISION
225 West Madison Street
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-4316
ca-civilmailbox@mcao.maricopa.gov
MCAO Firm No. 0003200

*Attorneys for Maricopa County Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julieta Bencomo, Dr. George Brooks, Sandra Kennedy, Joe Eddie Lopez, Hilda Ortega-Rosales, Samuel Peter Ramirez, Fernando Ruiz, Pastor Warren Stewart and Winston Tease,<br><br>Plaintiffs,<br><br>vs.<br><br>Phoenix Union High School District No. 210, Judith Pettit, Mary Price, David Wood, Linda LaFoy and Scot Butler, III, in their official capacities as members of the Governing Board of Phoenix Union High School District No. 210, Sandra E. Dowling, in her official capacity as Maricopa County School Superintendent, Maricopa County, Maricopa County Board Of Supervisors, and Betsey Bayless, Jim Bruner, Carole Carpenter, Tom Freestone and Ed Pastor, in their official capacities as members of the Maricopa County Board of Supervisors,<br><br>Defendants. | No. CV-90-0369-PHX-GMS<br><br>**MARICOPA COUNTY DEFENDANTS' RESPONSE BRIEF** |

The Maricopa County Defendants take no position on what relief this Court should order. As a reminder, the Maricopa County Defendants came to this Court when they discovered that the Elections Department had created the ballot for the 2024 general election that contained instructions for voting for the at large seats for the Phoenix Union School District governing board that violated the Consent Decree that had been entered in the early 1990s in this matter. This error was unintentional, but the early ballots had already been mailed and so the mistake could not be "fixed." The Maricopa County Defendants therefore came to this Court and asked it to determine how they should proceed in light of their unintentional violation of the Consent Decree. They expressly suggested two possible remedies—either allow the election for the at large seats on the Phoenix Union school board to continue and be canvassed, even with the faulty instruction printed on the ballot; or, allow the election to continue but enjoin the Board of Supervisors from canvassing it and then order a special election. [Doc. 121.] The Maricopa County Defendants put the decision squarely in the Court's hands, where it belonged, and they will not now presume to know what is best. They leave it to this Court's good judgment and trust the Court to do what is right.

As a result, the Maricopa County Defendants did not plan to file a Response brief to the candidates' and the Plaintiffs' briefs, in which they presented their views as to the proper form of relief that this Court should order.[1] However, in its December 3, 2024, Order, this Court directed the Maricopa County Defendants to file a Response brief addressing three

---

[1] Three of the candidates, as well as the Plaintiffs, argued that the Court should allow the November 5, 2024, election results for the two at large seats to be certified. One candidate argued that the Court should order that a special election must occur.

matters:

(1) [the] law governing special elections,

(2) what will be required of the County to run a special election, and

(3) what will be required of the candidates to participate in a special election.

[Order, Doc. 148, at 1.] The Maricopa County Defendants, therefore, submit this brief pursuant to the Court's Order.

## I.     The Law Governing Special Elections.

The laws governing elections generally apply to special elections. *See* A.R.S. § 16-537 ("The powers and duties conferred or imposed by law upon any public officer with respect to regular elections are conferred and imposed upon such officers with respect to special elections").

Arizona law contemplates special elections being called to fill vacancies, specifically in the office of United States Senator or Representative, or to elect delegates to a Constitutional Convention. A.R.S. §§ 16-221 – 16-224. There is no provision of law, of which the Maricopa County Defendants are aware, that specifically addresses calling a special election to attempt to "fix" a mistake made during the general election. That is not to suggest, of course, that this Court cannot order the County to conduct a special election. But because there is no provision of law directly addressing the present situation, the Maricopa County Defendants have relied on the general law relating to special elections for its overview in this section of their brief. They acknowledge that the law is not directly "on point" because it generally concerns special elections to fill vacancies, not to rectify an error.

### A. **Timeline.**

Special elections can be held on (a) the second Tuesday in March (*i.e.*, March 11, 2025); (b) the third Tuesday in May (*i.e.*, May 20, 2025); (c) the first Tuesday in August (*i.e.*, August 5, 2025); and (d) the first Tuesday after the first Monday in November (*i.e.*, November 4, 2025). A.R.S. § 16-204(F). These dates are used not only for special elections but also for certain other types of jurisdictional elections. Arizona law specifies that the Board of Supervisors may hold special elections and these other elections *only* on the dates just identified. A.R.S. § 16-205(B).

Arizona law requires that, **at least 210 days** before an election on one of the dates just listed, the Board of Supervisors must give notice, in writing, of the date of the election. A.R.S. § 16-205(A). And, the election must be called **not later than 180 days** before election day. A.R.S. § 16-226(A).[2] Accordingly, the March and May dates are too near in time to satisfy the statutory requirements related to noticing and calling the election. The earliest the special election could lawfully occur under the requirements of Title 16 is, therefore, August 5, 2025.

### B. **Election Format.**

Pursuant to A.R.S. §§ 16-204 and 16-409, a special election can be conducted by all mail as opposed to an in-person election. Since the early 2000s the voting jurisdictions within Maricopa County have preferred to offer all-mail special elections when not conducting an election in conjunction with the Primary or General Election. This has been

---

[2] Although the "call" of the election is not defined in statute, it is generally understood as the official proclamation of the election by the Board of Supervisors.

3

universally adopted for all special and other elections held on the dates required by A.R.S. § 16-204(F) since 2018.

While the 2024 November General Election, which included the Phoenix Union At Large contest, was an in-person election, it will likely not be possible to conduct an August (or, a March or May) special election in an in-person format. For the 2024 General Election, Maricopa County offered 67 voting locations within and near the Phoenix Union School District boundaries. To ensure that there were adequate voting locations to serve in-person voters, Maricopa County began outreach to facility owners **over a year in advance** of the General Election. Many of the facilities that Maricopa County uses as voting locations are not aware of a potential August (or, March or May) 2025 election.[3] If Maricopa County is unable to find a sufficient number of in-person voting locations, this could harm and disenfranchise voters in areas that a voting location is not available.

Because of the potential difficulties in acquiring sufficient polling locations to conduct an in-person election, which could lead to long lines and voter disenfranchisement, which could violate federal laws, and because of the historical preference of jurisdictions conducting special elections, an all-mail election is the County's preference if this Court orders a special election to be conducted.

## II.   What Will be Required of the County to Run a Special Election.

### A.   Cost of the Election.

To conduct an all-mail election, the cost to Maricopa County's taxpayers is $2.13 per

---

[3] Also, the election dates for March and May overlap with Easter and school graduations. If history serves as an indicator, this will result in churches and schools being unwilling to provide voting locations due to conflicting events.

voter. There are currently approximately 336,308 registered voters in the Phoenix Union School District. The cost to the County would, therefore, be approximately $713,336.

If the Court were to order that the County conduct an in-person special election, the cost to Maricopa County's taxpayers would be approximately $4.47 per voter. Thus, the estimated cost for an in-person special election for the Phoenix Union School District would be $1,503,297.

### B. Administrative Requirements.

To conduct an election, the County must conduct numerous tasks, including preparing the ballot template, causing the ballots to be printed, mailing early ballots to voters (including transmitting ballots to UOCAVA voters), conducting logic and accuracy testing of the tabulation machines, verifying signatures on early ballots, and tabulating the ballots.

### III. Candidate Requirements.

The Maricopa County Defendants feel ill-equipped to address this question. As was noted in an earlier hearing in this matter, the law requires that those who want to be candidates for an election—including a special election—must qualify for the ballot by submitting a sufficient number of nomination petition signatures. However, the County acknowledged in an earlier hearing in this matter that the Court can simply order, if it wants, that the four candidates who qualified for the general election are the candidates for the special election, thereby obviating their need to submit signature petitions.

That said, the Maricopa County Defendants note that they are aware of no law that would allow an election to be restricted to only *these four* candidates, thereby excluding anyone else from attempting to qualify for the ballot. Further, the Maricopa County

Defendants are concerned that such an order could raise constitutional concerns and could lead to legal challenges from those who would like to run for office in the special election but were not allowed to attempt to qualify for the ballot.

## IV. Voter Turnout.

The Maricopa County Defendants address one additional concern, that of voter turnout. As the Court is considering whether to order a special election, the Maricopa County Defendants suggest that the likely turnout for a special election, compared to the actual turnout for the 2024 general election, should be considered by the Court as it is weighing all of the relevant factors.

For the Phoenix Union High School District Governing Board Member At-Large contest, 222,719 of 316,441 (70.38%) registered voters participated in the Election. The turnout of 70.38% is consistent with the 72% of voters that turned out during the 2020 Phoenix Union School District Governing Board At-Large contest election.

Historically, the turnout rate for special elections is significantly lower. For example, there were thirteen March and May jurisdictional elections held between 2018 and 2024, inclusive. The average turnout was only 32.7%. Additionally, there were seven city of Phoenix elections between 2018 and 2023, inclusive. The average turnout was only 23.4%.

It is extremely likely that significantly fewer voters will participate in a special election than participated in the 2024 general election.

## CONCLUSION

As already stated, the Maricopa County Defendants take no position on what relief this Court should order, whether canvassing the results from the 2024 general election,

ordering a special election, or some other form of relief that the Court determines is proper.

RESPECTFULLY SUBMITTED this 6th day of December, 2024.

RACHEL H. MITCHELL<br>
MARICOPA COUNTY ATTORNEY

BY: */s/Joseph E. La Rue*
THOMAS P. LIDDY
JOSEPH E. LA RUE
ROSA AGUILAR
Deputy County Attorneys
*Attorneys for the Maricopa County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2024, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and service on all counsel of record in this matter.

*/s/ M. Delgado*