**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Julieta Bencomo, et al., | No. CV-90-00369-PHX-GMS |
| Plaintiffs, | **ORDER** |
| v. | |
| Phoenix Union High School District No. 210, et al., | |
| Defendants. | |

Pending before this Court is Maricopa County's Motion for Hearing or Conference. (Doc. 121). In that Motion, Maricopa County notified the Court that it inadvertently violated the Amended Consent Decree entered in this action and sought guidance on how to proceed. (*Id.*). This Order provides that direction. For the following reasons, the Court orders Maricopa County to hold a special election for the at-large seats on the Phoenix Union High School District Governing Board on Tuesday March 11, 2025.

## BACKGROUND

In 1990, minority, voting-age citizens residing in Phoenix Union High School District ("PUHSD" or "District") sued Maricopa County, among other defendants. (Doc. 111 at 2). In the lawsuit, Plaintiffs alleged that Arizona election law, A.R.S. § 15-427(A), as applied in PUHSD to require at-large elections, violated Section 2 of the Voting Rights Act of 1965. (*Id.* at 2). The parties settled the case by entering a consent decree ("Original Consent Decree"), over which this Court has jurisdiction. (*Id.*). Pursuant to the Voting Rights Act, the parties submitted the Original Consent Decree to the Department of Justice

for its approval and pre-clearance subject to Section 5. (*Id*. at 15).

The Original Consent Decree, as amended by the parties and approved by this Court in 2021 ("Amended Consent Decree" or "Decree"), requires that the two at-large seats "be elected together in a single race through a two-seat 'limited voting' system, whereby each voter will be entitled to cast only one vote for the candidate of his or her choice for the two at-large seats at stake" and that the election shall be held in the same years as presidential elections. (*Id.* at 7, 9). In its Motion for Hearing, Maricopa County informed the Court that, despite this requirement, it had printed ballots for the November 5, 2024 election with instructions directing voters to vote for up to two candidates for the PUHSD Governing Board election. (Doc. 121 at 3). By the time Maricopa County became aware of the mistake, voters on the Active Early Voting List had already received their ballots and commenced voting. (*Id.*).

Prior to the November 5 election date, the Court made the four candidates parties to this lawsuit for purposes of arriving at an appropriate remedy. It also ordered Maricopa County to inform the United States Department of Justice of this matter and provide the Department relevant materials, so the Department could intervene if it wished to do so. After consultation with the parties, the Court found no pre-election remedy practical and postponed action pending the results of the election to determine whether curative measures were necessary. The Court thus enjoined the canvass of the election but did not enjoin the counting of the ballots and set a post-election briefing schedule, requiring all those wanting to file proposed remedies to do so by Tuesday, November 26, 2024.[1]

Voters cast 222,719 votes in the election for the PUHSD Governing Board.[2] The difference in votes between the third- and second-place candidates, the latter of whom won a seat on the Governing Board, was only 1,979 votes. *See id.* Despite the mistake, about

---

[1] The "official canvass of each precinct or election district" is the "result printed by the vote tabulating equipment, to which have been added write-in and early votes, when certified by the board of supervisors or other officer in charge." A.R.S. § 16-622(A).

[2] *See* Maricopa County: Election Results, *Phoenix UHSD #210-GBM-4yr (Vote for 2)*, 29 (Dec. 5, 2024), https://elections.maricopa.gov/asset/jcr:6081b5b7-3b36-4467-bec3-718850c0ed3c/Unofficial%20Final%20Results%2011-18-24.pdf.

79 percent of the voters selected only one candidate on their ballots. *See id.*[3] However, at least 44,605 voters selected two candidates on their ballots, and thus cast ballots in violation of the Decree. Given the closeness of the race, that number of ballots cast in violation of the Decree is sufficient to prejudice the election. *See id.*[4]

## ANALYSIS

No party contests the jurisdiction of this Court, nor does any party contest the continuing validity of the Amended Consent Decree. No party expressed any position with respect to the Amended Consent Decree other than to "urge the Court to continue [its] enforcement." (Doc. 145). Further, the United States Department of Justice declined to intervene in the matter or to recommend any remedy. (Doc. 142). The Amended Consent Decree states that this "Court's jurisdiction extends to the consideration and disposition of all issues relating to alleged voting rights violations by defendants in or with regard to PUHSD." (Doc. 111 at 2-3). Here, Defendant Maricopa County's administration of the election for the PUHSD Governing Board violated the Decree. As such, this Court has jurisdiction over this action and over the parties involved, and, as required by the Amended Consent Decree, this Court exercises the authority to fashion relief in accordance with the terms of the Decree.

Nevertheless, the candidates who prevailed in the election request that the Court exercise extreme care before upsetting the results of the election. *See Sw. Voter Registration Educ. v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003) ("The right to vote is fundamental, but a federal court cannot lightly interfere with or enjoin a state election."); *see also Mont. Chamber of Com. v. Argenbright,* 226 F.3d 1049, 1058 (9th Cir. 2000) ("[T]he voiding of a state election is a 'drastic if not staggering' remedy.") (citation omitted); *see also Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1180 (9th Cir. 1988) (quoting *Gjersten v. Board of Election Comm'rs,* 791 F.2d 472, 478 (7th Cir. 1986)); *see also Election Integrity Project Cal., Inc. v. Weber,* 113 F.4th 1072, 1096-

---

[3] $176{,}538 \div 222{,}719 = 0.7925$; undervotes ÷ ballots cast = percent of voters who voted for only one candidate

[4] $222{,}719 - 176{,}538 - 1{,}576 = 44{,}605$; ballots cast – undervotes – overvotes = votes for two in violation of the Decree

97 (9th Cir. 2024).

To be sure, such care is appropriate and required. But the same cases cited by the proponents of immediate canvassing also note that "[e]lection irregularities that are so 'pervasive [that they] undermine[] the organic processes of the ballot' violate the fundamental fairness principles inherent in the Due Process clause." *Election Integrity*, 113 F.4th at 1096 (quoting *Soules,* 849 F.2d at 1184); *see also Bennett v. Yoshina,* 140 F.3d 1218, 1226-27 (9th Cir. 1998) (holding invalidation of an election appropriate where "a pervasive error . . . undermines the integrity of the vote" or "significant disenfranchisement . . . results from a change in the election procedures."); *see also LaChance v. Cnty. of Cochise,* 553 P.3d 176, 184 (Ariz. Ct. App. 2024).

In this case, the ballot violated the law governing the election by allowing each voter one more vote than they were permitted. The law restricting voters to one vote is an election limitation designed to protect minority voters within PUHSD. Maricopa County's mistake resulted in 44,605 illegitimate votes being cast when only 1,979 votes would distinguish a winner from a loser. Such a fundamental and potentially consequential error "undermines the organic processes of the ballot" itself and cannot be allowed to stand, regardless of the good faith of Maricopa County in committing it. The mistake simply makes it impossible to declare, with any confidence, who the winners of a legally conducted election would be or that the mistake was not consequential. None of the cases cited by the parties urging the Court to authorize the canvass of the present election involve such a situation. And, any effort to characterize this error as "garden variety" in light of the actual election results are, to put it mildly, unpersuasive.

Further, any federalism and state sovereignty concerns are overridden here by the crucial concern of voting rights protections under national law, which resulted in the Decree in the first place. Moreover, the Decree was entered and recently renewed at the request of Maricopa County among others. There is no doubt that Maricopa County failed to comply with the Decree while being bound by it, and thus concerns that this Court might be coercing an unwilling state entity or voting population in the conduct of its elections are

mitigated. This is further demonstrated by Maricopa County's willingness to take whatever steps are necessary to correct its error.

Some of the candidates argue that the Court can ignore the failure of Maricopa County to comply with the process required by the Decree because its purpose was to protect Black and Hispanic voters, and Hispanic candidates received the two highest vote totals in the recent election. The Court, however, also finds this argument less than persuasive. It is undoubtedly true that the Decree was entered to protect minority voters and minority candidates within the geographical boundaries of the PUHSD. But, as it must, the Amended Consent Decree establishes the required processes for voting in the at-large elections in neutral terms, even though it was designed as a protection to minority candidates. The Court thus may not ignore the required voting processes simply because Hispanic candidates were the two highest vote getters. Such action would present constitutional questions or, at the least, significant questions about the scope of the term "minority" with regard to the present demographics of the PUHSD which no party has briefed. The Court need not address these or significant other questions when no party here challenges the validity of the present Amended Consent Decree.

It is likely, as some of the parties point out, that a special election will have a lower voter turnout than the general election, and the Decree does schedule the at-large elections to occur in the year that coincides with presidential elections—perhaps to enhance voter turnout. (Doc. 111 at 9).[5] As the results of the recent general election demonstrate, however, more voters in a fatally flawed election, at least in this instance, do not help determine who would have won the election had it been lawfully conducted. Nor do they demonstrate that the error was harmless. Therefore, in fashioning a remedy for the County's failure, prioritizing the date of the election over compliance with the law does not provide electoral integrity.

---

[5] Historically, voter turnout in Maricopa County for special elections is significantly lower than turnout for general elections. (Doc. 150 at 7). The average turnout for the 2020 and 2024 PUHSD Governing Board at-large contest election was 72 and 70 percent, respectively. (*Id.*). The average turnout rate for the 13 special elections held between 2018 and 2024, inclusive, was 33 percent. (*Id.*).

- 5 -

A special election provides a remedial measure to cure unfixable flaws in the recent election. It will occur as soon as reasonably possible after the election date indicated in the Decree. The earliest eligible date for the election is Tuesday, March 11, 2025. That will be the date set for the special election. The four candidates qualified for the November 5, 2024 election by filing a sufficient number of nominating petitions and need not requalify. As such, the Maricopa County Board of Supervisors need not timely comply with the advance-notice requirements of A.R.S. §16-205(A) or the advance-call requirements of A.R.S. § -226(A). To replicate the election as nearly as possible, those four candidates' names shall be placed on the ballot. No other persons may stand as candidates.

The Court also considered canvassing the vote in light of the burdens on the candidates. However, the Amended Consent Decree explicitly obligates this Court to supervise and enforce "the implementation of the remedies set forth [in the Decree]." It goes without saying, however, that no candidate need put effort into the special election should they choose not to do so.

Further, Maricopa County proposes to conduct the ballot by mail pursuant to A.R.S. §§ 16-204 and 16-409. (Doc. 150 at 4). This is acceptable to the Court. The election by mail will allow Maricopa County to mail a ballot to every eligible voter in the PUHSD. Voting involves minimal disruption. The voter need merely vote and return the ballot by mail. The process allows every voter in the PUHSD who wishes to make the minimal effort to do so, to vote in the manner designed to protect minority populations in their board representation.

Pursuant to the Arizona Constitution, the Court orders the current office holders to continue to hold their PUHSD, at-large Governing Board seats until the special election occurs. *See* Ariz. Const. art. XXII, § 13 ("The term of office of every officer to be elected or appointed under this Constitution or the laws of Arizona shall extend until his successor shall be elected and shall qualify.").

Under the present circumstances, the Court finds that a special election is the only

principled way to remedy Maricopa County's violation of the Decree.  No perfect remedy exists.  Nevertheless, the number of votes cast in violation of the Decree is more prejudicial than holding a special election with lower voter turnout.

Accordingly,

**IT IS HEREBY ORDERED** permanently enjoining a canvass of the November 5, 2024 election for two at-large members of the Phoenix Union High School District Governing Board.

**IT IS FURTHER ORDERED** that Maricopa County hold an all-mail, special election for the at-large seats on the Phoenix Union High School District Governing Board on March 11, 2025.

**IT IS FURTHER ORDERED** that the four candidates who qualified for the general election—Francisco Pastor-Rivera, Aaron Marquez, Deborah Cross, and Aiden Ramirez—are the candidates for the special election.

**IT IS FURTHER ORDERED** the current office holders continue to hold their at-large seats on the Phoenix Union High School District Governing Board until the special election occurs.

**IT IS FURTHER ORDERED** all reasonable attorneys' fees incurred by Phoenix Union High School District arising in the district court proceeding from this matter shall be paid and/or reimbursed by Maricopa County.

Dated this 12th day of December, 2024.

_____
G. Murray Snow
Senior United States District Judge